**[J-24-2015] [MO: Stevens, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.**


| | |
|---|---|
| EVONNE K. WERT, EXECUTRIX OF THE ESTATE OF ANNA E. KEPNER, DECEASED<br><br><br><br>v.<br><br><br>MANORCARE OF CARLISLE PA, LLC D/B/A MANORCARE HEALTH SERVICES-CARLISLE; HCR MANORCARE, INC; MANOR CARE, INC.; HCR HEALTHCARE, LLC; HCR II HEALTHCARE, LLC; HCR III HEALTCARE, LLC; HCR IV HEALTHCARE, LLC: GGNSC GETTYSBURG, LP, D/B/A GOLDEN LIVING CENTER-GETTYSBURG; GGNSC GETTYSBURG GP, LLC; GGNSC HOLDINGS, LLC; GOLDEN GATE NATIONAL SENIOR CARE, LLC; GGNSC EQUITY HOLDINGS, LLC; GGNSC ADMINISTRATIVE SERVICES, LLC<br><br><br><br>APPEAL OF: GGNSC GETTYSBURG LP, D/B/A GOLDEN LIVING CENTER - GETTYSBURG; GGNSC GETTYSBURG GP, LLC; GGNSC HOLDINGS, LLC; GOLDEN GATE NATIONAL SENIOR CARE, LLC; GGNSC EQUITY HOLDINGS, LLC AND GGNSC ADMINISTRATIVE SERVICES, LLC | No. 62 MAP 2014<br><br>Appeal from the order of the Superior Court at No. 1746 MDA 2012 dated December 19, 2013 Affirming the order of the Cumberland County Court of Common Pleas, Civil Division, at No. 12-165 CIVIL dated September 13, 2012.<br><br>ARGUED: April 7, 2015 |

## DISSENTING OPINION

**MR. JUSTICE BAER**                    **DECIDED:  October 27, 2015**

Like the Superior Court, the Majority has decided to repudiate the arbitration agreement entered into by the parties, Golden Living Center-Gettysburg *et al*. (Appellants) and Evonne K. Wert (Appellee), and to compel Appellants to litigate the dispute in the trial court.  I perceive this result to be contrary to the plain language of the arbitration agreement, which provided that the agreement was intended to require arbitration and to preclude a lawsuit or court process, and to flow from a leap in logic that finds no support in the actual agreement or governing law, as explained below. Accordingly, I dissent.

Public policy in this Commonwealth favors arbitration agreements.  See Fastuca v. L.W. Molnar & Assoc., 10 A.3d 1230, 1245 (Pa. 2011) ("As our Court has observed on repeated occasions, the settlement of disputes by arbitration is favored by the public policy of this Commonwealth and is, therefore, encouraged by our courts and by statute."); Borgia v. Prudential Ins. Co., 750 A.2d 843, 850-51 (Pa. 2000); Johnson v. Pennsylvania Nat. Ins. Companies, 594 A.2d 296, 300 (Pa. 1991); Flightways Corp. v. Keystone Helicopter Corp., 331 A.2d 184, 185 (Pa. 1975); Ice City, Inc. v. Ins. Co. of N. Am., 314 A.2d 236, 241 (Pa. 1974) ("It is beyond cavil that settlement of disputes by arbitration or appraisal is the approved public policy of this Commonwealth."); Mendelson v. Shrager, 248 A.2d 234, 235 (Pa. 1968) ("[O]ur statutes encourage arbitration and with our dockets crowded and in some jurisdictions conjested [sic] arbitration is favored by the courts."); Capecci v. Joseph Capecci, Inc., 139 A.2d 563,

565 (Pa. 1958) (recognizing that "[t]he public policy of this State is to give effect to arbitration agreements," and providing that "[w]here the parties by contract contemplate the settlement of disputes by arbitration, every reasonable intendment will be made in favor of the agreement.").

Because Pennsylvania favors arbitration, it is consistent with the federal policy of also favoring arbitration enforcement. Moscatiello v. Hilliard, 939 A.2d 325, 329 (Pa. 2007). See also Bhatia v. Johnston, 818 F.2d 418, 421 (5th Cir. 1987) (recognizing that "the question of arbitrability [is to] be addressed with a 'healthy regard for the federal policy favoring arbitration,' with doubts regarding the scope of the agreement resolved in favor of arbitration." (quoting Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983)); Salley v. Option One Mortgage Corp., 925 A.2d 115, 118 (Pa. 2007) (acknowledging the liberal federal policy favoring arbitration agreements); Thibodeau v. Comcast Corp., 912 A.2d 874, 878-80 (Pa.Super. 2006).[1]

---

[1]    Indeed, the Federal Arbitration Act (FAA) was enacted to ensure the enforcement of arbitration agreements, as the Supreme Court has explained:

> The FAA was designed "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate," Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219–220, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), and to place such agreements "'upon the same footing as other contracts,'" Scherk v. Alberto–Culver Co., 417 U.S., 506, 511, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) (quoting H.R.Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)). While Congress was no doubt aware that the Act would encourage the expeditious resolution of disputes, its passage "was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered." Byrd, 470 U.S. at 220, 105 S.Ct. 1238.... [The FAA] simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n. 12, 87 S.Ct.

(…continued)

With this background in mind, and to analyze the terms of this particular arbitration agreement, we should be clear about what the agreement did, and did not say. As the Majority relates, the agreement provided that any ensuing litigation "shall be resolved exclusively by binding arbitration . . . in accordance with the National Arbitration Forum Code of Procedure. . ." The agreement further provided that it was to be governed and interpreted under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16. Finally, relevant to our analysis, it provided a severance clause requiring that if a court were to find any portion of the agreement unenforceable, the rest of the agreement "shall remain effective." With this clear language, the agreement established that the exclusive form of dispute resolution is arbitration, not the courts, and that such arbitration will be conducted pursuant to a certain set of procedural rules.

Notably, the arbitration agreement did not name an arbitrator, and most certainly did not provide that the National Arbitration Forum (NAF) was the only entity that could serve as arbitrator. The Majority's holding that the arbitration agreement required that arbitration be conducted by the NAF departs from the plain language of the agreement. Agreeing to utilize a certain set of procedural rules does not name the administering body of those rules as sole arbitrator. As Judge Easterbrook observed in interpreting a similar arbitration agreement in favor of arbitration, "[i]f [the agreement] were designed to require arbitration to be conducted by [NAF] exclusively, the reference to its Code would be surplusage; the only reason to refer to the Code is to create the possibility of

_____

(continued…)

      1801, 18 L.Ed.2d 1270 (the Act was designed "to make arbitration agreements as enforceable as other contracts, but not more so").

Volt Info. Sciences, Inc., v. Bd. of Tr. of the Leland Jr. Univ., 489 U.S. 468, 478 (1989).

arbitration outside the [NAF]'s auspices, but using its rules of procedure." Green v. U.S. Cash Advance Illinois, LLC, 724 F.3d 787, 789 (7th Cir. 2013). See also Wert v. Manorcare of Carlisle et al., No. 1746 MDA 2012 (Pa.Super. Dec. 19, 2013) (Fitzgerald, J., concurring) ("I would not find that the agreement to arbitrate pursuant to the NAF Code is coterminous with agreement that only NAF could administer the arbitration, where the document itself does not identify who shall administer the arbitration.").

Although the NAF Code of Procedure provides, in Rule 1.A, that it shall be administered by the NAF, this is not the same as requiring NAF to act as sole arbitrator. While the NAF administers its Code of Procedure, there is nothing limiting another arbitrator from employing the code to arbitrate the parties' dispute. An agreement to arbitrate in accord with the NAF Code of Procedure is valid, even without NAF's availability to serve as arbitrator.

To the extent that one can interpret Rule 1.A as providing that the NAF Code of Procedure depends on the NAF as arbitrator, a proposition of which I remain unconvinced, it is unenforceable because of NAF's unavailability. Under such circumstances, Rule 1.A is qualified by Rule 48.C, which provides that if a portion of the NAF Code of Procedure is unenforceable, the remainder of the code will continue in effect. See Green, 724 F.3d at 789. Accordingly, the NAF's Code of Procedure remains in effect even where the NAF is not serving as arbitrator.

Moreover, the Code of Procedure also provides in Rule 48.D that "[i]f Parties are denied the opportunity to arbitrate a dispute. . . before the [NAF], the Parties may seek legal and other remedies in accord with applicable law." Green, 724 F.3d at 789. Here, the parties, in their agreement, identified the FAA as such an applicable law. Section 5

of the FAA permits a court, upon request, to appoint a substitute arbitrator. 9 U.S.C. § 5.[2] Section 5 further instructs that arbitration clauses remain enforceable if for any reason there is a lapse in naming an arbitrator, and would seem to apply to the circumstances presented here.

Additionally, the severability clause of this agreement further indicates the parties' intention to preserve their agreement to arbitrate in the event a portion of the agreement is found unenforceable. When parties consent in an agreement to settle all future disputes by arbitration, they are bound by that provision; "the function of the courts is limited to enforcing this contractual provision according to its terms as established by the parties." Fastuca, 10 A.3d at 1245. Given the agreement's purpose of ensuring dispute resolution through arbitration, it is illogical to dispense with the agreement because of the NAF's unavailability.

Although, as the Majority recognizes, there is a split of authority by courts interpreting similar arbitration agreements that rely on the NAF Code of Procedure, the

---

[2] Section 5 provides as follows:

If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C.A. § 5.

force of logic employed by those courts enforcing the arbitration agreement with a substituted arbitrator[3] is more persuasive than the fiction created by those courts that have thrown out the arbitration agreement by equating use of the NAF Code of Procedure with an identification of the NAF as sole arbitrator.[4]

In affirming the trial court's finding that the agreement was unenforceable because the NAF could not serve as arbitrator, the Superior Court relied on its prior decision in Stewart v. GGNSC-Canonsburg, 9 A.3d 215 (Pa.Super. 2010), a decision which I believe, in accord with my opinion herein, is not supportable. Although the arbitration agreement interpreted and cast aside in Stewart mirrored the agreement utilized by the parties in this case, the Superior Court's decision therein suffered from the same leap in logic I have identified in the Majority's present analysis: it equated the agreement's invocation of the NAF Code of Procedure with naming the NAF as the sole arbitrator.

Accordingly, I disagree with the Majority that the agreement identified the arbitrator, and that the unavailability of this arbitrator vitiates the entire agreement.

---

[3] See, e.g., Green v. U.S. Cash Advance Illinois, LLC, 724 F.3d 787, 789 (7th Cir. 2014); Kahn v. Dell, Inc., 669 F.3d 350 (3d Cir. 2012); Pendergast v. Sprint Nextel Corp., 691 F.3d 1224, 1236 n.13 (11th Cir. 2012); Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222 (11th Cir. 2000); Wright v. GGNSC Holdings LLC, 808 N.W.2d 114, 119-20 (S.D. 2011); Jones v. GGNSC Pierre, 684 F.Supp.2d 1161, 1167 (D. S.D. 2010).

[4] See, e.g., Ranzy v. Tijerina, 393 Fed. Appx. 174 (5th Cir. 2010); Licata v. GGNSC Maiden Dexter, LLC, 29 Mass. L. Rep. 467 at *8 (Mass. Super. 2012); Stewart v. GGNSC-Canonsburg, 9 A.3d 215 (Pa.Super. 2010); GGNSC Tylertown LLC v. Dillon, 87 So.3d 1063, 1066 (Miss. Ct. App. 2011); Geneva-Roth, Capital, Inc. v. Edwards, 956 N.E.2d 1195, 1203 (Ind. App. 2011), cert. den., 133 S. Ct. 650 (2012).

Rather, the agreement invoked a set of procedural rules while remaining silent on the identity of the arbitrator. Because the parties selected arbitration, courts should not utilize logical fallacies or rely on nonexistent contractual terms to throw the baby out with the bathwater.