J-A01023-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GERALD J. RILEY, AS ADMINISTRATOR OF THE ESTATE OF ROSEANNE P. RILEY, DECEASED | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| PREMIER HEALTHCARE MANAGEMENT, LLC., JONATHAN BLEIER, YAAKOV SOD, DEER MEADOWS PROPERTY LP, YF PROPERTY  HOLDINGS, LLC, DEER MEADOWS OPERATING, LLC, D/B/A DEER MEADOWS REHABILITATION CENTER, HCR MANORCARE INC, MANCARE OF YARDLEY, PA, LLC D/B/A MANORCARE HEALTH SERVICES - OXFORD VALLEY, HCR MANORCARE OPERATIONS II, LLC., HCR III HEALTHCARE, LLC., HEARTLAND EMPLOYMENT SERVICES, LLC., AILEEN RAFTER MULVEY, NHA., AND HCR MANORCARE SERVICES, LLC. | : : : : : : : : : : : : : : : : : : : : : | No. 3538 EDA 2019 |
| APPEAL OF: PREMIER HEALTHCARE MANAGEMENT, LLC., JONATHAN BLEIER, YAAKOV SOD, DEER MEADOWS PROPERTY LP, YF PROPERTY HOLDINGS, LLC., AND DEER MEADOWS OPERATING, LLC, D/B/A DEER MEADOWS REHABILITATION CENTER | : : : : : : : : : | |

Appeal from the Order Entered November 21, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 190303352

J-A01023-21

BEFORE:   BENDER, P.J.E., OLSON, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED:  MAY 28, 2021**

Appellants, Premier Healthcare Management, LLC, Jonathan Bleier, Yaakov Sod, Deer Meadows Property LP, YF Property Holdings, LLC, and Deer Meadows Operating, LLC d/b/a Deer Meadows Rehabilitation Center, appeal from the order entered on November 21, 2019, which overruled their preliminary objections to compel arbitration.  We vacate and remand.

On March 26, 2019, Gerald J. Riley, as Administrator for the Estate of Roseanne P. Riley, deceased ("Plaintiff"), commenced this wrongful death and survival action against Appellants by filing a *praecipe* for a writ of summons. Within Plaintiff's later-filed complaint, Plaintiff alleged and averred the following.

Deer Meadows Rehabilitation Center ("Deer Meadows") is a skilled nursing facility and each appellant is "the employer, supervisor and/or partner of" Deer Meadows.  Plaintiff's Complaint, 7/30/19, at ¶¶ 1 and 5-23.  In April 2017, Roseanne P. Riley ("Mrs. Riley") was admitted to Deer Meadows and Deer Meadows "assumed responsibility for [Mrs. Riley's] total healthcare, including the provision of nutrition, hydration, activities of daily living, medical, skilled nursing, rehabilitation, and therapy."[1]  *Id.* at ¶ 41. According to Plaintiff's complaint, however, Deer Meadows provided Mrs. Riley with

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] At the time of her admission to Deer Meadows, Mrs. Riley was 53 years old. **See** Progress Notes, dated 4/4/17, at 18.

- 2 -

negligent treatment, which caused Mrs. Riley "to suffer pressure sores, sepsis and septic shock, poor hygiene, severe pain, and ultimately death." ***Id.*** at ¶ 82. As a result, Plaintiff filed a wrongful death and survival action against Appellants, wherein Plaintiff sought damages for harms and losses allegedly sustained as a result of Appellants' negligent care.

Appellants filed preliminary objections to Plaintiff's complaint and claimed, among other things, that Mrs. Riley had contractually agreed to resolve her claims against Appellants through arbitration. Appellants' Preliminary Objections, 8/19/19, at ¶ 7. Specifically, Appellants claimed, on April 5, 2017, Mrs. Riley "voluntarily signed the Deer Meadows Admission Agreement[], which contains an arbitration clause." ***Id.*** at 11. Appellants thus requested that the trial court "order all Plaintiff's claims against [Appellants] to proceed to arbitration in accordance with the arbitration agreement." ***Id.*** at Wherefore Clause (some capitalization omitted).

Appellants attached the Deer Meadows Admission Agreement ("Admission Agreement") to their preliminary objections. Of note, the Admission Agreement is 19 pages long and Mrs. Riley's signature appears on the final page of the agreement. The arbitration clause appears on pages 12 through 16 of the agreement. The arbitration clause does not contain a separate signature line and there is no express option to decline the clause prior to signing the Admission Agreement. Further, each paragraph of the arbitration clause is single-spaced and contains all capital letters. The clause reads, in full:

22.3 <u>MANDATORY, BINDING ARBITRATION</u>. ARBITRATION IS A SPECIFIC PROCESS OF DISPUTE RESOLUTION UTILIZED INSTEAD OF THE TRADITIONAL STATE OR FEDERAL COURT SYSTEM. INSTEAD OF A JUDGE AND/OR JURY DETERMINING THE OUTCOME OF A DISPUTE, A NEUTRAL THIRD PARTY ("ARBITRATOR(S)") CHOSEN BY THE PARTIES TO THIS AGREEMENT RENDERS THE DECISION, WHICH IS BINDING ON BOTH PARTIES. GENERALLY AN ARBITRATOR'S DECISION IS FINAL AND NOT OPEN TO APPEAL. THE ARBITRATOR WILL HEAR BOTH SIDES OF THE DISPUTE AND RENDER A DECISION BASED ON FAIRNESS, LAW, COMMON SENSE AND THE RULES ESTABLISHED BY THE ARBITRATION ASSOCIATION SELECTED BY THE PARTIES. WHEN ARBITRATION IS MANDATORY, IT IS THE ONLY LEGAL PROCESS AVAILABLE TO THE PARTIES. MANDATORY ARBITRATION HAS BEEN SELECTED WITH THE GOAL OF REDUCING THE TIME, FORMALITIES AND COST OF UTILIZING THE COURT SYSTEM.

(a) <u>CONTRACTUAL AND/OR PROPERTY DAMAGE DISPUTES</u>. UNLESS RESOLVED OR SETTLED BY MEDIATION, ANY CONTROVERSY, DISPUTE, DISAGREEMENT OR CLAIM OF ANY KIND OR NATURE, ARISING FROM, OR RELATING TO THIS AGREEMENT, OR CONCERNING ANY RIGHTS ARISING FROM OR RELATING TO AN ALLEGED BREACH OF THIS AGREEMENT, WITH THE EXCEPTION OF (1) GUARDIANSHIP PROCEEDINGS RESULTING FROM THE ALLEGED INCAPACITY OF THE RESIDENT; (2) COLLECTION ACTIONS INITIATED BY THE FACILITY FOR NONPAYMENT OF STAY OR FAILURE OF LEGAL REPRESENTATIVE TO FULFILL HIS/HER OBLIGATIONS UNDER THIS AGREEMENT OR THE LEGAL REPRESENTATIVE AGREEMENT WHICH RESULTS IN A FINANCIAL LOSS TO THE FACILITY; AND (3) DISPUTES INVOLVING AMOUNTS IN CONTROVERSY OF LESS THAN TWELVE THOUSAND DOLLARS ($12,000), SHALL BE SETTLED EXCLUSIVELY BY ARBITRATION. THIS MEANS THAT THE RESIDENT WILL NOT BE ABLE TO FILE A LAWSUIT IN ANY COURT TO RESOLVE ANY DISPUTES OR CLAIMS THAT THE RESIDENT MAY HAVE AGAINST THE FACILITY. IT ALSO MEANS THAT THE RESIDENT IS RELINQUISHING OR GIVING UP ALL RIGHTS THAT THE RESIDENT MAY HAVE TO A JURY TRIAL TO RESOLVE ANY DISPUTES OR CLAIMS AGAINST THE FACILITY. IT ALSO MEANS THAT THE FACILITY IS GIVING UP ANY RIGHTS IT MAY HAVE TO A JURY TRIAL OR TO BRING CLAIMS IN A COURT

AGAINST THE RESIDENT. THE ARBITRATION SHALL BE ADMINISTERED BY A NEUTRAL ARBITRATOR SELECTED IN ACCORDANCE WITH SECTION 23.3(G), AND JUDGMENT ON ANY AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING APPROPRIATE JURISDICTION. RESIDENT AND/OR RESPONSIBLE PERSON ACKNOWLEDGE(S) AND UNDERSTAND(S) THAT THERE WILL BE NO JURY TRIAL ON ANY CLAIM OR DISPUTE SUBMITTED TO ARBITRATION, AND RESIDENT AND/OR RESPONSIBLE PERSON RELINQUISH AND GIVE UP THEIR RIGHTS TO A JURY TRIAL ON ANY MATTER SUBMITTED TO ARBITRATION UNDER THIS AGREEMENT.

(b) PERSONAL INJURY OR MEDICAL MALPRACTICE. UNLESS RESOLVED OR SETTLED BY MEDIATION, ANY CLAIM THAT THE RESIDENT MAY HAVE AGAINST THE FACILITY FOR ANY PERSONAL INJURIES SUSTAINED BY THE RESIDENT ARISING FROM OR RELATING TO ANY ALLEGED MEDICAL MALPRACTICE, INADEQUATE CARE, OR ANY OTHER CAUSE OR REASON WHILE RESIDING IN THE FACILITY, SHALL BE SETTLED EXCLUSIVELY BY ARBITRATION. THIS MEANS THAT THE RESIDENT WILL NOT BE ABLE TO FILE A LAWSUIT IN ANY COURT TO BRING ANY CLAIMS THAT THE RESIDENT MAY HAVE AGAINST THE FACILITY FOR PERSONAL INJURIES INCURRED WHILE RESIDING IN THE FACILITY. IT ALSO MEANS THAT THE RESIDENT IS RELINQUISHING OR GIVING UP ALL RIGHTS THAT THE RESIDENT MAY HAVE TO A JURY TRIAL TO LITIGATE ANY CLAIMS FOR DAMAGES OR LOSSES ALLEGEDLY INCURRED AS A RESULT OF PERSONAL INJURIES SUSTAINED WHILE RESIDING IN THE FACILITY. THE ARBITRATION SHALL BE ADMINISTERED BY A NEUTRAL ARBITRATOR SELECTED IN ACCORDANCE WITH SECTION 23.3(G), AND JUDGMENT ON ANY AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING APPROPRIATE JURISDICTION. RESIDENT AND/OR RESPONSIBLE PERSON ACKNOWLEDGE(S) AND UNDERSTAND(S) THAT THERE WILL BE NO JURY TRIAL ON ANY CLAIM OR DISPUTE SUBMITTED TO ARBITRATION, AND RESIDENT AND/OR RESPONSIBLE PERSON RELINQUISH AND GIVE UP THE RESIDENT'S RIGHT TO A JURY TRIAL ON ANY CLAIMS FOR DAMAGES ARISING FROM PERSONAL INJURIES TO THE RESIDENT WHICH ARE SUBMITTED TO ARBITRATION UNDER THIS AGREEMENT.

(c) EXCLUSION FROM ARBITRATION. THOSE DISPUTES WHICH HAVE BEEN EXCLUDED FROM MANDATORY ARBITRATION (I.E., GUARDIANSHIP PROCEEDINGS AND DISPUTES INVOLVING AMOUNTS IN CONTROVERSY OF LESS THAN $12,000) MAY BE RESOLVED THROUGH THE USE OF THE JUDICIAL SYSTEM. IN SITUATIONS INVOLVING ANY OF THE MATTERS EXCLUDED FROM MANDATORY ARBITRATION, NEITHER RESIDENT NOR THE FACILITY IS REQUIRED TO USE THE ARBITRATION PROCESS. ANY LEGAL ACTIONS RELATED TO THOSE MATTERS MAY BE FILED AND LITIGATED IN ANY COURT WHICH MAY HAVE JURISDICTION OVER THE DISPUTE. THIS ARBITRATION PROVISION SHALL NOT IMPAIR THE RIGHTS OF RESIDENT TO APPEAL ANY TRANSFER AND/OR DISCHARGE ACTION INITIATED BY THE FACILITY TO THE APPROPRIATE ADMINISTRATIVE AGENCY, AND AFTER THE EXHAUSTION OF SUCH ADMINISTRATIVE APPEALS, TO APPEAL TO THE COURT EXERCISING APPELLATE JURISDICTION OVER THE ADMINISTRATIVE AGENCY. THIS ARBITRATION PROVISION SHALL NOT PRECLUDE THE PARTIES FROM FILING, WHERE APPROPRIATE, GOOD FAITH CRIMINAL COMPLAINTS AGAINST EACH OTHER, AND SHALL NOT PREVENT PROPER AUTHORITIES FROM REMOVING RESIDENT FROM THE FACILITY FOR UNLAWFUL TRESPASS OR ANY OTHER CRIMINAL ACTS.

(d) RIGHT TO LEGAL COUNSEL. RESIDENT HAS THE RIGHT TO BE REPRESENTED BY LEGAL COUNSEL IN ANY PROCEEDINGS INITIATED UNDER THIS ARBITRATION PROVISION. BECAUSE THIS ARBITRATION PROVISION ADDRESSES IMPORTANT LEGAL RIGHTS, THE FACILITY ENCOURAGES AND RECOMMENDS THAT RESIDENT OBTAIN THE ADVICE AND ASSISTANCE OF LEGAL COUNSEL TO REVIEW THE LEGAL SIGNIFICANCE OF THIS MANDATORY ARBITRATION PROVISION PRIOR TO SIGNING THIS AGREEMENT.

(e) LOCATION OF ARBITRATION. THE ARBITRATION WILL BE CONDUCTED AT A SITE SELECTED BY THE PARTIES, WHICH SHALL BE AT THE FACILITY OR AT A SITE WITHIN A REASONABLE DISTANCE OF THE FACILITY.

(f) TIME LIMITATION FOR ARBITRATION. ANY REQUEST FOR ARBITRATION OF A DISPUTE MUST BE REQUESTED AND SUBMITTED TO THE ARBITRATOR WITHIN TWO (2) YEARS OF

THE DATE ON WHICH THE EVENT GIVING RISE TO THE DISPUTE OCCURRED. THE FAILURE TO SUBMIT A REQUEST FOR ARBITRATION WITHIN SUCH TWO (2) YEAR PERIOD SHALL OPERATE AS A BAR TO ANY SUBSEQUENT REQUEST FOR ARBITRATION, OR FOR ANY CLAIM FOR RELIEF OR A REMEDY, OR TO ANY ACTION OR LEGAL PROCEEDING OF ANY KIND OR NATURE, AND THE PARTIES WILL BE FOREVER BARRED FROM ARBITRATING OR LITIGATING A RESOLUTION TO ANY SUCH DISPUTE.

(g) SELECTION OF ARBITRATOR. EITHER PARTY MAY COMMENCE AN ARBITRATION ACTION BY GIVING WRITTEN NOTICE TO THE OTHER PARTY. UPON RECEIPT OF SUCH NOTICE, THE PARTIES SHALL ENDEAVOR IN GOOD FAITH TO TIMELY SELECT A NEUTRAL ARBITRATOR BY MUTUAL AGREEMENT. IF THE NEUTRAL ARBITRATOR IS AN INDIVIDUAL ARBITRATOR, THEN THE PENNSYLVANIA RULES OF CIVIL PROCEDURE SHALL APPLY TO THE ARBITRATION PROCEEDING. IF THE NEUTRAL ARBITRATOR IS AN ARBITRATION AGENCY OR ASSOCIATION, THEN SUCH AGENCY'S OR ASSOCIATION'S PROCEDURAL RULES SHALL APPLY. IF THE PARTIES ARE UNABLE TO AGREE ON A NEUTRAL ARBITRATOR WITHIN NINETY (90) DAYS OF WRITTEN NOTICE OF ARBITRATION, THEN ADR OPTIONS, INC., SHALL SERVE AS THE ARBITRATOR AND SHALL ADMINISTER THE ARBITRATION IN ACCORDANCE WITH ITS PROCEDURAL RULES. IN THE EVENT ADR OPTIONS, INC., IS UNABLE OR UNWILLING TO SERVE, THEN THE PARTIES AGREE THAT A COURT OF COMPETENT JURISDICTION SHALL SELECT AND APPOINT AN ALTERNATIVE NEUTRAL ARBITRATOR OR ARBITRATION SERVICE. CONTACT INFORMATION FOR ADR OPTIONS, INC. IS AS FOLLOWS:

TWO COMMERCE SQUARE, SUITE 1100
2001 MARKET STREET
PHILADELPHIA, PA 19103-7044
PHONE: (215) 564-1775 / (800) 364-6098
FAX: (215) 564-1822
WEBSITE: WWW.ADROPTIONS.COM

(h) ALLOCATION OF COSTS FOR ARBITRATION. THE COSTS OF THE ARBITRATION SHALL BE BORNE EQUALLY BY EACH PARTY, AND EACH PARTY SHALL BE RESPONSIBLE FOR THEIR OWN LEGAL FEES, EXCEPT IN A COLLECTION ACTION IN

WHICH CASE THE PREVAILING PARTY SHOULD BE ENTITLED TO RECOVER ATTORNEY'S FEES AND COSTS. IF THE RESIDENT IS THE PREVAILING PARTY, THEN RESIDENT SHALL BE ENTITLED TO RECOVERY OF ATTORNEY'S FEES AND COSTS INCURRED IN DEFENDING THE COLLECTION ACTION. IF THE FACILITY IS THE PREVAILING PARTY, THEN IT SHOULD BE ENTITLED TO RECOVERY OF ATTORNEY'S FEES AND COSTS INCURRED IN PURSUING THE ENFORCEMENT OF RESIDENT'S FINANCIAL OBLIGATIONS.

(i) <u>LIMITED RESIDENT RIGHT TO RESCIND THIS MANDATORY ARBITRATION CLAUSE (SECTIONS 23.3(A-L) OF THIS AGREEMENT)</u>. RESIDENT OR, IN THE EVENT OF RESIDENT'S INCAPACITY, RESIDENT'S AUTHORIZED REPRESENTATIVE HAVE THE RIGHT TO RESCIND THIS ARBITRATION CLAUSE BY NOTIFYING THE FACILITY IN WRITING WITHIN THIRTY (30) DAYS OF THE ADMISSION DATE. SUCH NOTICE MUST BE SENT VIA CERTIFIED MAIL TO THE ATTENTION OF THE ADMINISTRATOR OF THE FACILITY, AND THE NOTICE MUST BE POST-MARKED WITHIN THIRTY (30) DAYS OF THE ADMISSION DATE. THE NOTICE MAY ALSO BE HAND-DELIVERED TO THE ADMINISTRATOR WITHIN THE SAME THIRTY (30) DAY PERIOD. THE FILING OF A CLAIM IN A COURT OF LAW WITHIN THE THIRTY (30) DAYS PROVIDED FOR ABOVE WILL AUTOMATICALLY RESCIND THE ARBITRATION CLAUSE WITHOUT ANY FURTHER ACTION BY RESIDENT OR RESIDENT'S AUTHORIZE REPRESENTATIVE.

(j) <u>SEVERABILITY, REFORMATION</u>. IN THE EVENT ANY ONE OR MORE TERMS OR PROVISIONS OF THIS ARBITRATION CLAUSE ARE FOUND OR DECLARED IN ANY RESPECT TO BE VOID, VOIDABLE, INVALID, ILLEGAL, OR UNENFORCEABLE, THE VALIDITY AND ENFORCEABILITY OF THE REMAINING PROVISIONS OF THIS CLAUSE SHALL NOT BE IN ANY WAY AFFECTED, PREJUDICED OR DISTURBED, IT BEING INTENDED THAT SUCH REMAINING PROVISIONS SHALL BE BINDING WITH THE SAME EFFECT AND CONSTRUED AS IF THE INVALID PROVISIONS HAD NEVER EXISTED AT THE TIME OF THE EXECUTION OF THIS AGREEMENT, AND THE TERMS AND PROVISIONS OF THIS ARBITRATION CLAUSE SHALL BE DEEMED AND ARE DECLARED TO BE SEVERABLE.

(k) <u>RELATED PERSONS AND AFFILIATED ENTITIES SUBJECT TO THIS ARBITRATION CLAUSE</u>. IT IS AGREED THAT ANY

CLAIM THE RESIDENT MAY HAVE AGAINST ANY AFFILIATE OF THE FACILITY IS INCLUDED WITHIN THE SCOPE OF THIS ARBITRATION SECTION. THEREFORE, THE PROVISIONS OF THIS ARBITRATION SECTION SHALL EXTEND TO AND INCLUDE, WITHOUT LIMITATION, THE FACILITY, THE ARCHDIOCESE OF PHILADELPHIA, CATHOLIC HEALTH CARE SERVICES, THE FACILITY ADMINISTRATOR, THE FACILITY DIRECTOR OF NURSING, AND THE FACILITY MEDICAL DIRECTOR. ANY CONTRACTUAL CLAIM, PROPERTY DAMAGE CLAIM, PERSONAL INJURY CLAIM OR MEDICAL MALPRACTICE CLAIM ARISING OUT OF OR INVOLVING THE RESIDENCY OF THE RESIDENT AT THE FACILITY IS SUBJECT TO THE PROVISIONS OF THIS SECTION 23 INCLUDING CLAIMS INVOLVING INDIVIDUALS OR ENTITIES AFFILIATED WITH THE FACILITY WHO ARE NAMED OR IDENTIFIED AS PARTIES TO THE DISPUTE.

(l) <u>CONFIDENTIALITY</u>. RESIDENT AGREES THAT, AT ALL TIMES, RESIDENT WILL KEEP ANY INFORMATION REGARDING THE ARBITRATION PROCEEDING, INCLUDING RULINGS, DECISIONS AND AWARDS BY THE ARBITRATOR, CONFIDENTIAL AND WILL NOT DISCLOSE VOLUNTARILY TO ANY THIRD PARTY, EXCEPT TO THE EXTENT REQUIRED BY LAW. RESIDENT IS PERMITTED TO DISCLOSE THAT THE MATTER HAS BEEN RESOLVED, WITHOUT DISCLOSING THE RESULTS OF THE ARBITRATION PROCEEDING.

Admission Agreement, dated 4/5/17, at 12-16.

Plaintiff responded to the preliminary objections and claimed that the arbitration clause was unenforceable, as it violated "federal law." Specifically, Plaintiff cited 42 C.F.R. § 483.70(n)(1), which, at the time, declared:

(n) Binding arbitration agreements.

(1) A facility must not enter into a pre-dispute agreement for binding arbitration with any resident or resident's representative nor require that a resident sign an arbitration agreement as a condition of admission to the [long-term care ("LTC")] facility.

42 C.F.R. § 483.70(n)(1) (effective November 28, 2016 to September 15, 2019); Plaintiff's Response, 9/9/19, at ¶ 7.

Plaintiff noted that Appellants titled the arbitration clause "MANDATORY, BINDING ARBITRATION."  Plaintiff's Response, 9/9/19, at ¶ 7.  As Plaintiff argued, since the Admission Agreement mandated arbitration, the arbitration clause "violat[ed] [Section 483.70(n)(1)] and is thus a nullity." *Id.* at ¶ 15.

Further, Plaintiff filed new matter and a memorandum of law in opposition to Appellants' preliminary objections.  Within these filings, Plaintiff claimed that the arbitration clause was unenforceable, as it was procedurally and substantively unconscionable.   Plaintiff's New Matter, 9/9/19, at ¶ 2; Plaintiff's Memorandum of Law, 9/9/19, at 6-9.

Appellants filed a supplemental brief in support of their preliminary objections and attached certain medical records and deposition testimony to support their demand to compel arbitration.  Of note, Appellants attached nursing "progress notes" from April 4 and 5, 2017 – which were, respectively, the day that Mrs. Riley was admitted to Deer Meadows and the day that Mrs. Riley signed the Admission Agreement.  The progress notes declare that Mrs. Riley was "AAOX3" on both days – meaning that the nurses found Mrs. Riley alert to time, place, and person on those two days.  *See* Progress Notes, dated 4/4/17-4/5/17, at 17-18; *see also* N.T. Leigha Himes Deposition, 11/14/19, at 25.

Appellants also attached a sworn affidavit from Mrs. Riley's son, Mark Riley.  Mark Riley averred that, "[a]t the time of her admission to Deer

Meadows, I know [Mrs. Riley] was taking at least Oxycodone, Xanax, Amoxicillin and Dilaudid." Mark Riley's Affidavit, 10/28/19, at ¶ 6. Although Mark Riley was not present for his mother's admission to Deer Meadows, he averred that "[a]t the time of her admission to Deer Meadows on April 4, 2017, [Mrs. Riley] was drowsy, confused, and inattentive as a result of the medication she was taking" and that Mrs. Riley "was often 'out of it,' and prone to nodding off unexpectedly." *Id.* at ¶¶ 7-9.

Third, and perhaps most importantly, Appellants attached deposition testimony from Leigha Himes, the admissions coordinator for Deer Meadows. Ms. Himes testified that she neither remembered Mrs. Riley nor recalled "anything about presenting the admission agreement to" Mrs. Riley. N.T. Leigha Himes Deposition, 11/14/19, at 24. However, Ms. Himes testified that, during the time in question, the admissions procedure occurred as follows.

First, Ms. Himes testified that she would have handed the applicant the 19-page Admission Agreement, along with "45 pages of attachments." *Id.* at 33. She testified that she would have explained the Admission Agreement to the applicant in the following manner:

> I would explain that the admission agreement goes over everything the facility is obligated to provide for the resident; nursing care, therapy, housing, meals, things like that. I would explain that it allows us to bill their insurance. It allows us to share information between people involved in their medical care and essentially is permission to treat. Other things I would include were by signing the agreement you would also acknowledge that if you no longer needed the services on a particular unit you may be asked to change rooms and move off that unit. And then I would also touch

> on the bed hold policy, which means when a person goes out to the hospital, what happens to the bed and the belongings when a person goes out to the hospital.

*Id.* at 41.

Ms. Himes testified that she would have offered the applicant the opportunity to read the Admission Agreement "on [his or her] own" and would have then "ask[ed him or her] to sign" the signature line on the final page of the agreement. *Id.* at 42.

Ms. Himes testified that she remembered instances where applicants specifically declined the arbitration clause prior to signing the Admission Agreement. She testified that, in such instances: "I would have them X it out and initial it or sign it and I would also . . . sign it acknowledging that." *Id.* at 22. However, nothing in the agreement declares that an applicant has the option to "X [the arbitration clause] out" and Ms. Himes never testified that she proactively informed applicants that they had this option. Further, Ms. Himes testified that, during the relevant time, she was not aware of the rescission provision in the arbitration clause and, thus, she did not explain that provision of the contract before asking the applicant to sign the Admission Agreement. *Id.* at 22 and 44-48.

On November 20, 2019, the trial court heard oral argument on Appellants' preliminary objection and, on November 21, 2019, the trial court overruled Appellants' preliminary objection to compel arbitration. Trial Court Order, 11/21/19, at 2. As the trial court later explained, it overruled Appellants' preliminary objection to compel arbitration because it concluded

that the arbitration agreement was both procedurally and substantively unconscionable. Trial Court Opinion, 2/6/20, at 13.

Appellants filed a timely notice of appeal.[2] They raise two claims on appeal:

> 1. Whether the trial court erred in determining that the agreement to arbitrate disputes was void as unconscionable, as the evidence did not support a finding of either substantive or procedural unconscionability?
>
> 2. Whether Mrs. Riley's estate was able to prove, by clear and convincing evidence, that she lacked the requisite capacity to agree to the arbitration of disputes?

Appellants' Brief at 3 (some capitalization omitted).[3]

We have explained:

> Our review of a claim that the trial court improperly [overruled] the appellant's preliminary objections in the nature of a petition to compel arbitration is limited to

_____

[2] "An order overruling preliminary objections seeking to compel arbitration is immediately appealable as an interlocutory appeal as of right pursuant to 42 Pa.C.S.A. § 7320(a) and Pa.R.A.P. 311(a)(8)." **Cardinal v. Kindred Healthcare, Inc.**, 155 A.3d 46, 49 n.1 (Pa. Super. 2017).

[3] Appellants' issues on appeal concern the arbitrability of Plaintiff's survival claim. Appellants acknowledge that Plaintiff's wrongful death claim is not arbitrable. **See** Appellants' Reply Brief at 4 n.1 (stating: "[c]ontrary to [Plaintiff's] assertions, [Appellants] acknowledge [the Superior Court's] precedential decision in **Pisano v. Extendicare Homes, Inc.**, 77 A.3d 651 (Pa. Super. 2013), which does not bind non-signatory wrongful death beneficiaries to arbitration agreements"); **see also Pisano**, 77 A.3d at 663 (holding: "Pennsylvania's wrongful death statute creates an independent action distinct from a survival claim that, although derived from the same tortious conduct, is not derivative of the rights of the decedent. [Therefore, a decedent's] contractual agreement with [a nursing facility] to arbitrate all claims [is] not binding on the non-signatory wrongful death claimants").

- 13 -

determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in [overruling the preliminary objections]. In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. First, we examine whether a valid agreement to arbitrate exists. Second, we must determine whether the dispute is within the scope of the agreement. . . . If the two-part test results in affirmative answers, then the controversy must be submitted to arbitration. . . .

Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our [standard of review is *de novo* and our scope of review is plenary]. In making these determinations, courts must bear in mind: (1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute. To resolve this tension, courts should apply the rules of contractual construction, adopting an interpretation that gives paramount importance to the intent of the parties and ascribes the most reasonable, probable, and natural conduct to the parties. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement.

*TTSP Corp. v. Rose Corp.*, 217 A.3d 1269, 1280 (Pa. Super. 2019) (quotations and citations omitted).

"Pennsylvania has a well-established public policy that favors arbitration, and this policy aligns with the federal approach expressed in the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (FAA)." *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 660 (Pa. Super. 2013). "This policy applies equally to all arbitration agreements, including those involving nursing

homes." *MacPherson v. Magee Mem'l Hosp. for Convalescence*, 128 A.3d 1209, 1219 (Pa. Super. 2015) (*en banc*).

Nevertheless, the policy favoring arbitration "was not intended to render arbitration agreements more enforceable than other contracts, and the FAA [was not] designed to preempt all state law related to arbitration." *Pisano*, 77 A.3d at 661 (quotations and citations omitted). "Thus, when addressing the specific issue of whether there is a valid agreement to arbitrate, courts generally should apply ordinary state-law principles that govern the formation of contracts, but in doing so, must give due regard to the federal policy favoring arbitration." *Id.* (quotations and citations omitted). This means that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" the FAA. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). However, "[c]ourts may not . . . invalidate arbitration agreements under state laws applicable only to arbitration provisions." *Id.*

Here, the trial court refused to enforce the arbitration clause because, it concluded, the clause was unconscionable. "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *MacPherson*, 128 A.3d at 1221 (quotations and citations omitted). "The aspects entailing lack of meaningful choice and unreasonableness have been termed procedural and substantive unconscionability, respectively." *Salley v. Option One Mortgage Corp.*,

925 A.2d 115, 119 (Pa. 2007). An unconscionability determination requires that both procedural and substantive unconscionability be present and "[t]he burden of proof generally concerning both elements has been allocated to the party challenging the agreement." *Cardinal*, 155 A.3d at 53; *Salley*, 925 A.3d at 119-120. "[T]he ultimate determination of unconscionability is for the courts." *Salley*, 925 A.2d at 119-120.

The learned trial court determined that the arbitration clause was procedurally unconscionable because: under the terms of the clause, the applicant was required to agree to arbitration as a condition of entering the facility – and could only later "rescind" his or her agreement to arbitrate; the arbitration clause was found buried in the Admission Agreement, and was not "its own, independent document;" the title of the arbitration clause specifically declares that arbitration is "mandatory;" and, the admissions coordinator did not notify the applicant that an arbitration clause was contained in the Admission Agreement. *See* Trial Court Opinion, 2/6/20, 4-11.

We agree that the above conditions are present in this case and that they favor a finding of procedural unconscionability. Nevertheless, we observe that several additional factors are also present in this case, which militate against a finding of procedural unconscionability. Of note: the arbitration clause specifically provides the resident with the unconditional right to rescind the arbitration clause within 30 days of admission; the admissions coordinator testified that applicants were, in fact, permitted to "X [the arbitration clause] out" prior to signing the Admission Agreement (although the admissions

coordinator did not proactively inform applicants of this option); in contrast to the remainder of the Admission Agreement, the arbitration clause is written in all capital letters, thus signifying its importance; the arbitration clause is written in a fairly readable style; and, the arbitration clause explains the basic procedure, costs, and benefits of arbitration. **See** Admission Agreement, dated 4/5/17, at 12-16.

Thus, various aspects of the arbitration clause favor and disfavor a finding of procedural unconscionability. However, as explained above, an unconscionability determination requires that both procedural and substantive unconscionability be present – and, in this case, the arbitration clause is not so "unreasonably favorable" to Appellants that it may be labeled substantively unconscionable.

The trial court concluded that the arbitration clause was substantively unconscionable because Appellants reserved their right to bring a collection action against the resident in the court system. **See** Trial Court Opinion, 2/6/20, at 11; **see also** Admission Agreement, dated 4/5/17, at 12. As the Pennsylvania Supreme Court has explained, however, "parties who agree to arbitrate some claims may exclude others from the scope of the arbitration agreement." **Salley**, 925 A.2d at 128. Further, this reservation of a single category of claims is not so unfairly one-sided as to render the arbitration clause substantively unconscionable.

Moreover, within Plaintiff's brief, Plaintiff cites only two additional provisions in the arbitration clause that, he contends, support the trial court's

substantive unconscionability determination. First, Plaintiff observes that subsection (h) permits fee-shifting, but "only for those collections claims brought by" Appellants; second, Plaintiff notes that the clause places a duty of confidentiality on the resident, but not Appellants. Plaintiff's Brief at 9 (emphasis omitted). These claims do not support a finding of substantive unconscionability and thus fail.

First, subsection (h) of the arbitration clause provides:

(h) ALLOCATION OF COSTS FOR ARBITRATION. The costs of the arbitration shall be borne equally by each party, and each party shall be responsible for their own legal fees, except in a collection action in which case the prevailing party should be entitled to recover attorney's fees and costs. If the resident is the prevailing party, then resident shall be entitled to recovery of attorney's fees and costs incurred in defending the collection action. If the facility is the prevailing party, then it should be entitled to recovery of attorney's fees and costs incurred in pursuing the enforcement of resident's financial obligations.

Admission Agreement, dated 4/5/17, at 15 (some capitalization omitted).

According to Plaintiff, the above provision is unreasonably one-sided because it permits "fee-shifting . . . only for those collections claims brought by" Appellants. Plaintiff's Brief at 9 (emphasis omitted). Plaintiff's claim fails because the fee shifting is reciprocal: if the resident prevails in the collection action, the resident is entitled to attorney's fees and costs; if Appellants prevail in the collection action, they are entitled to the same. Further, the mere fact that the fee shifting provision is limited to a collection action does

not render the arbitration clause unreasonably one-sided, given that the fee shifting provision applies equally to this one category of dispute.

Second, Plaintiff claims that the arbitration clause is substantively unconscionable because subsection (l) declares that the resident has a duty to "keep any information regarding the arbitration proceeding . . . confidential."[4] According to Plaintiff, since this duty of confidentiality "applies only to the resident, not the facility," the entire arbitration clause is substantively unconscionable. *See* Plaintiff's Brief at 9.

It is true that the duty of confidentiality does not apply reciprocally. However, this provision merely concerns the disclosure of information regarding certain aspects of an arbitration proceeding. It does not affect Appellants' potential liability or Plaintiff's potential remedies – and it does not make the arbitration clause so unfair and unreasonably one-sided as to be substantively unconscionable.

---

[4] Subsection (l) of the arbitration clause provides, in full:

> (l) CONFIDENTIALITY. Resident agrees that, at all times, resident will keep any information regarding the arbitration proceeding, including rulings, decisions and awards by the arbitrator, confidential and will not disclose voluntarily to any third party, except to the extent required by law. Resident is permitted to disclose that the matter has been resolved, without disclosing the results of the arbitration proceeding.

Admission Agreement, dated 4/5/17, at 16 (some capitalization omitted).

Thus, we conclude that the arbitration clause is not substantively unconscionable and that the trial court erred when it refused to enforce the clause on grounds of unconscionability.

Notwithstanding our holding, Plaintiff claims that remand is unwarranted in this case because: the arbitration clause "represents a flagrant violation of federal law[, specifically 42 C.F.R. § 483.70(n)(1),] and is thus a nullity;" Mrs. Riley's promise to arbitrate is void because it constitutes "additional consideration" for her admission into the facility; and, since Plaintiff's wrongful death claims must remain in court, "severing [Plaintiff's wrongful death and survival] claims into two separate forums would result in unreasonable expense and delay to all involved, thus rendering the [arbitration clause] impracticable." Plaintiff's Brief at 11-18. These claims fail.

We first examine Plaintiff's claim that the arbitration clause "represents a flagrant violation of federal law and is thus a nullity." *Id.* at 11. According to Plaintiff, the arbitration clause violates 42 C.F.R. § 483.70(n)(1), which, at the time of Mrs. Riley's admission, provided:

> (n) Binding arbitration agreements.
>
> (1) A facility must not enter into a pre-dispute agreement for binding arbitration with any resident or resident's representative nor require that a resident sign an arbitration agreement as a condition of admission to the [long-term care ("LTC")] facility.

42 C.F.R. § 483.70(n)(1) (effective November 28, 2016 to September 15, 2019). According to Plaintiff, since Mrs. Riley was required to agree to the

arbitration clause as a condition of her admission into the Deer Meadows, the arbitration clause violates 42 C.F.R. § 483.70(n)(1) and "is thus a nullity." Plaintiff's Brief at 11.

Plaintiff's reliance upon 42 C.F.R. § 483.70(n)(1) is not persuasive for several reasons. First, the rule is expressly concerned with the eligibility of long-term care facilities to receive federal Medicare and Medicaid funding – and not with the enforceability of a private agreement in a court of law. *See Northport Health Servs. of Ark., LLC v. U.S. Dep't of Health & Human Servs.*, 438 F.Supp.3d 956, 966-967 (W.D. Ark. 2020). Second, on November 7, 2016, the United States District Court for the Northern District of Mississippi, Oxford Division, issued a nationwide preliminary injunction, which stopped the rule from going into effect. *See American Health Care Ass'n v. Burwell*, 217 F.Supp.3d 921 (N.D. Miss. 2016); *see also Northport Health Servs.*, 438 F.Supp.3d at 961-963. Further, on December 9, 2016, the agency that promulgated 42 C.F.R. § 483.70(n)(1) – the Center for Medicare and Medicaid Services ("SMS") – "issued a nation-wide instruction to State Survey Agency Directors, directing them not to enforce" Section 483.70(n)(1). *See* 84 FR 34718-01.

We note that Section 483.70(n) was later amended. The amended version of Section 483.70(n), however, did not take effect until September 16, 2019, which is well after the parties signed the Admission Agreement in this case. Further, nothing in the amended rule demands that it be applied retroactively. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208

(1988) ("[r]etroactivity is not favored in the law. Thus, . . . administrative rules will not be construed to have retroactive effect unless their language requires this result").

Thus, even if a Medicare/Medicaid eligibility regulation could potentially be viewed as relevant to a private contractual dispute, Section 483.70(n)(1) is not relevant here: at the time Mrs. Riley entered Deer Meadows and agreed to arbitrate her disputes, Section 483.70(n)(1) was subject to a nationwide injunction and the injunction was never lifted. As such, Section 483.70(n)(1) has no relevance to the instant dispute and Plaintiff's reliance upon this regulation fails.

Plaintiff also claims that remand is unnecessary because 42 U.S.C. § 1396r(c)(5)(A)(iii) declares that nursing homes participating in the Medicare and Medicaid programs may not accept additional consideration "as a precondition of admitting" a resident to their facility.[5] Plaintiff's Brief at 12.

---

[5] 42 U.S.C. § 1396r(c)(5)(A)(iii) provides:

> With respect to admissions practices, a nursing facility must—
>
> (iii) in the case of an individual who is entitled to medical assistance for nursing facility services, not charge, solicit, accept, or receive, in addition to any amount otherwise required to be paid under the State plan under this subchapter, any gift, money, donation, or other consideration as a precondition of admitting (or expediting the admission of) the individual to the facility or as a requirement for the individual's continued stay in the facility.

*(Footnote Continued Next Page)*

According to Plaintiff, "[s]o even if [Mrs.] Riley's promise to arbitrate was supported by [Appellants'] promise to admit and care for her, the mandatory nature of the arbitration provision violates federal law and is void." *Id.*

Plaintiff's claim fails. As the Supreme Court of Alabama cogently explained:

> requiring a nursing-home admittee to sign an arbitration agreement is not charging an additional fee or other consideration as a requirement to admittance. Rather, an arbitration agreement sets a forum for future disputes; both parties are bound to it and both receive whatever benefits and detriments accompany the arbitral forum. If we were to agree with [the party seeking to avoid the arbitration clause], virtually any contract term [they] decided [they] did not like could be construed as requiring "other consideration" in order to gain admittance to the nursing home and thus be disallowed by the statute. [The] argument based on 42 U.S.C. § 1396r(c)(5)(A)(iii) is without merit.

*Owens v. Coosa Valley Health Care, Inc.*, 890 So.2d 983, 989 (Ala. 2004) (emphasis omitted). We agree with the *Owens* Court and conclude that Mrs. Riley's agreement to arbitrate her disputes does not constitute "other consideration" under 42 U.S.C. § 1396r(c)(5)(A)(iii). Plaintiff's claim to the contrary thus fails.

Finally, Plaintiff claims that remand is unnecessary because Plaintiff's wrongful death claims must remain in court. Plaintiff claims that "severing [Plaintiff's wrongful death and survival] claims into two separate forums would result in unreasonable expense and delay to all involved, thus rendering the

---

42 U.S.C. § 1396r(c)(5)(A)(iii).

[arbitration clause] impracticable." Plaintiff's Brief at 15-18. The Pennsylvania Supreme Court has already rejected Plaintiff's claim. Certainly, in *Taylor v. Extendicare Health Facilities, Inc.*, 147 A.3d 490 (Pa. 2016), the Supreme Court held:

> the prospect of inefficient, piecemeal litigation proceeding in separate forums is no impediment to the arbitration of arbitrable claims. Indeed, where a plaintiff has multiple disputes with separate defendants arising from the same incident, and only one of those claims is subject to an arbitration agreement, the [United States Supreme] Court requires, as a matter of law, adjudication in separate forums.

*Taylor*, 147 A.3d at 507. Plaintiff's claim, which rests on the expediency of unitary judicial resolution, thus fails.

For Appellants' second numbered claim on appeal, Appellants contend that Plaintiff did not prove, by clear and convincing evidence, that Mrs. Riley lacked capacity to enter into the Admission Agreement. Appellants' Brief at 22.

At the outset, we do not see where Plaintiff ever claimed, before the trial court, that Mrs. Riley lacked capacity to enter into the Admission Agreement. *See* Plaintiff's Response to Preliminary Objections, 9/9/19, at 1-9; Plaintiff's Memorandum of Law in Opposition to Preliminary Objections, 9/9/19, at 1-18. Nevertheless, we observe that, in its opinion, the trial court declared: "[a]s [the trial court] overruled the petition to enforce arbitration on the grounds the agreement is unconscionable, [the trial court would not] address whether or not [Mrs.] Riley lacked capacity to enter into the

arbitration agreement." Trial Court Opinion, 2/6/20, at 11 n.8. Appellants cite this language and argue Plaintiff failed to prove, by clear and convincing evidence, that Mrs. Riley lacked capacity to enter into the Admission Agreement. Therefore, Appellants claim that we do not need to remand this case to the trial court, so that the trial court may make a further factual finding on Mrs. Riley's capacity. Appellants' Brief at 22-26.

Simply stated, any claim that Mrs. Riley lacked capacity to enter the Admission Agreement is beyond the trial court's scope of review, as it constitutes a "challenge to the validity of [the] contract as a whole." **Salley**, 925 A.2d at 120. As our Supreme Court has explained:

> Although an arbitration agreement may be challenged on grounds of unconscionability, . . . the United States Supreme Court has expressed the concern that allowing a party to invoke judicial review to challenge the parties' overall agreement (and therefore also an arbitration component) would contravene Congress' purpose to facilitate a just and speedy resolution of controversies that is not subject to delay and/or obstruction in the courts. Accordingly, the Supreme Court has determined that a challenge to the validity of a contract as a whole, and not specifically to an arbitration clause, must be presented to the arbitrator and not the courts. The courts may consider, in the first instance, only those challenges that are directed solely to the arbitration component itself.

**Id.** (citations omitted).

Any claim that Mrs. Riley lacked capacity to enter into the Admission Agreement is "a challenge to the validity of [the] contract as a whole;" as such, the claim "must be presented to the arbitrator and not the courts." **Id.**

Order vacated. Case remanded. Jurisdiction relinquished.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/28/21